719 N.E.2d 1168 (1999)
308 Ill. App.3d 291
241 Ill.Dec. 765
In the Interest of D.J.S., a Minor (The People of the State of Illinois, Petitioner-Appellee,
v.
William J. S., Respondent-Appellant).
No. 3-99-0243.
Appellate Court of Illinois, Third District.
October 29, 1999.
*1169 James Andreoni, Asst. Public Defender (Court appointed), Princeton, for William J. Sharp. *1170 John X. Breslin, Deputy Director, State's Attorneys Appellate Prosecutor, Ottawa, Patrick J. Herrmann, State's Attorney, Princeton, Richard T. Leonard, State's Attorneys Appellate Prosecutor, for the People.
Justice HOMER delivered the opinion of the court:
The respondent, William J. S., appeals from the judgment of the trial court terminating his parental rights to the minor, D.J.S. On appeal, William contends that the trial court failed to obtain in personam jurisdiction over him at the time of the initial adjudication of D.J.S. as an abused and neglected minor because no summons was issued and served upon him at that time. William further argues that the trial court's finding of unfitness was against the manifest weight of the evidence and its decision to terminate his parental rights was an abuse of discretion. We affirm.

FACTS
D.J.S. was born on December 17, 1992. On July 16, 1993, the State filed a petition for adjudication of wardship, alleging that William had physically abused D.J.S.'s mother. This abuse had occurred while the mother was holding D.J.S., and D.J.S. had been struck by William during the encounter. William also allegedly tossed D.J.S. to his mother during an argument. The petition further alleged that D.J.S. was neglected because his mother left him in the care of William.
A hearing on the temporary custody of D.J.S. was held on the day the petition for adjudication of wardship was filed. According to the order entered that day, William appeared at the hearing. The judge granted temporary custody of D.J.S. to the Illinois Department of Children and Family Services (the Department). Thereafter, summonses were issued and served upon D.J.S. and his mother.
The initial case review was held in August 1993. William attended the review along with D.J.S.'s mother. The Department's service plan called for William to submit to an alcohol evaluation and a psychiatric evaluation. He was further required to attend parenting classes and domestic violence counseling.
William visited with D.J.S. three times in September 1993.
An adjudicatory hearing was held November 22, 1993. The record indicates that D.J.S.'s mother was present but William was not. At that time, D.J.S. was adjudicated an abused and neglected minor. A dispositional order entered the same day awarded custody and guardianship of D.J.S. to the Department.
William visited with D.J.S. three times during December 1993, and three times in January 1994. He also visited twice in February 1994 and attended the case review meeting at the end of that month. At that time, William had not met any of the requirements of the Department's service plan.
William did not attend the case review meeting held in July 1994. In August 1994, D.J.S.'s mother surrendered her parental rights. William had no contact with the Department until November 1994 when he telephoned to arrange a visit. That visit occurred in December 1994. However, William failed to attend a visit scheduled for the following week. He did not attend the case review meeting held in January 1995.
The next case review meeting was scheduled for July 1995. William's sister informed the Department before the meeting that William would not attend because he was incarcerated.
William was confined to the Bureau County jail from June 1995 to December 1995. He was in the custody of the Illinois Department of Corrections from February 1996 to June 1998. During this time, William did not contact the Department. He did not send any cards or letters to be forwarded to D.J.S. Shortly after his release from the Department of Corrections, *1171 William was reincarcerated on a parole violation.
In February 1997, the State filed a petition to terminate William's parental rights. In its petition, the State argued, inter alia, that William had failed to make reasonable efforts to correct the conditions which led to the removal of D.J.S. and had further failed to make reasonable progress toward the return of D.J.S. At that time, William was served with a summons, and an attorney was appointed to represent him. William's attorney objected to any proceedings on the petition to terminate parental rights without an adjudication that D.J.S. was an abused or neglected minor with regard to William. He based this argument upon the failure of the State to serve William with a summons at the outset of the proceeding in 1993.
In accordance with William's wishes, the trial court conducted an adjudicatory hearing at which it determined that D.J.S. was an abused and neglected minor with regard to William. The court then proceeded to consider whether William was an unfit parent and whether his parental rights should be terminated. In each instance, the court resolved these questions against William.

ANALYSIS
William argues first on appeal that the trial court lacked jurisdiction to enter the November 1993 adjudicatory order against him. He maintains that the lack of jurisdiction renders all subsequent orders of the court void.
Proper service of summons is necessary to establish in personam jurisdiction. State Bank v. Thill, 113 Ill.2d 294, 100 Ill.Dec. 794, 497 N.E.2d 1156 (1986). Service of process serves two objectives. It notifies the defendant of pending litigation and enables him to appear and defend against it, and it vests jurisdiction in the trying court. In re Marriage of Wilson, 150 Ill.App.3d 885, 104 Ill.Dec. 184, 502 N.E.2d 447 (1986). A plaintiff need not serve process upon a defendant who voluntarily appears in the proceeding. See Augsburg v. Frank's Car Wash, 103 Ill.App.3d 329, 59 Ill.Dec. 39, 431 N.E.2d 58 (1982).
In the instant case, the State failed to properly serve William with a summons at the commencement of the abuse and neglect proceedings regarding D.J.S. However, William voluntarily appeared at the initial hearing and thus subjected himself to the jurisdiction of the court. By appearing on July 16, 1993, William gained actual knowledge of the proceedings. He knew that the matter had been continued and that he would have to appear again if he intended to defend himself against the State's allegations. Consequently, the objectives of service of process were achieved at that time. We hold that the circuit court properly exercised in personam jurisdiction over William; its orders are not void.
Next, William maintains that the State failed to prove by clear and convincing evidence that he was an unfit parent.
Section 1 of the Adoption Act provides several grounds for finding that a parent is unfit. 750 ILCS 50/1(D) (West 1996). Among these grounds are the failure to make reasonable efforts to correct the conditions that were the basis for the removal of the child from the parent and the failure to make reasonable progress toward the return of the child. 750 ILCS 50/1(D)(m) (West 1996). Whether a parent's efforts to correct conditions are reasonable involves a subjective judgment of the particular parent's efforts; however, the reasonableness of a parent's progress toward the child's return is measured objectively by the amount of movement toward the goal of reunification. In re L.L.S., 218 Ill.App.3d 444, 160 Ill.Dec. 804, 577 N.E.2d 1375 (1991). A finding of unfitness must be based on evidence that is clear and convincing. In re Adoption of Syck, 138 Ill.2d 255, 149 Ill.Dec. 710, 562 N.E.2d 174 (1990). When more than one *1172 allegation of unfitness has been made, a finding that any one allegation has been proved is sufficient to declare the respondent unfit. See In re J.P., 261 Ill.App.3d 165, 198 Ill.Dec. 565, 633 N.E.2d 27 (1994). Once such a finding has been made, however, it will be given great deference and will not be disturbed on appeal unless it is contrary to the manifest weight of the evidence. In re J.B., 198 Ill.App.3d 495, 144 Ill.Dec. 679, 555 N.E.2d 1198 (1990).
Here, the only effort William has ever made has been to visit with D.J.S. on several occasions in late 1993 and early 1994 and one time in December 1994. William did not attend parenting classes. He did not obtain an alcohol or psychological evaluation. He did not attempt to maintain contact between himself and D.J.S. from December 1994 until late 1998. Even keeping in mind that William was incarcerated during some of this time, we must conclude that his efforts were not reasonable.
In addition, William failed to make any progress toward D.J.S.'s return. At the time of the fitness hearing, D.J.S. was no closer to being returned to William's custody than he had been at the time of his removal. The trial court's determination that William failed to make both reasonable efforts and reasonable progress was not contrary to the manifest weight of the evidence.
Finally, William argues that it was not in D.J.S.'s best interests to terminate William's parental rights.
Once a finding of unfitness has been made, all considerations must yield to the best interests of the child. In re M.C., 197 Ill.App.3d 802, 144, Ill.Dec. 214, 555 N.E.2d 111, (1990). The trial court's decision to terminate an individual's parental rights will not be disturbed absent an abuse of discretion. In re V.O., 284 Ill. App.3d 686, 220 Ill.Dec. 527, 673 N.E.2d 439(1996).
The evidence in the case at bar showed that D.J.S. had not lived with William since D.J.S. was less than one year old. He had not seen William in four years. William had not completed any of the tasks in the service plan, so he would not be able to resume custody of D.J.S. for some time, even after he was released from prison. To allow D.J.S. to continue in foster care would deprive D.J.S. of the chance to be adopted and to join a stable family unit. Such a result would not be in D.J.S.'s best interests. We hold that the trial court did not abuse its discretion in terminating William's parental rights.

CONCLUSION
For the foregoing reasons, the judgment of the circuit court of Bureau County is affirmed.
Affirmed.
SLATER and KOEHLER, JJ., concur.