NOTICE
Decision filed 08/04/23. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2023 IL App (5th) 230182-U

NOS. 5-23-0182, 5-23-0183 cons.

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| *In re* RYLEIGH D. and AUSTIN D., Minors | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Clinton County. |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | |
| v. | ) | Nos. 20-JA-7, 20-JA-8 |
| | ) | |
| Allen D., | ) | Honorable |
| | ) | Ericka A. Sanders, |
| Respondent-Appellant). | ) | Judge, presiding. |

JUSTICE MOORE delivered the judgment of the court.
Presiding Justice Boie and Justice Welch concurred in the judgment.

**ORDER**

¶ 1     *Held*: Where evidence amply supported the circuit court's conclusions that respondent was an unfit parent and that his children's best interests required terminating his parental rights, and any argument to the contrary would lack merit, we grant respondent's appointed appellate counsel leave to withdraw and affirm the circuit court's judgment.

¶ 2     The circuit court found that respondent, Allen D., was unfit to parent his minor children, Ryleigh D. and Austin D., and that it was in the minors' best interests to terminate his parental rights. Respondent appeals.

¶ 3     Respondent's appointed appellate counsel concludes that there is no reasonably meritorious argument that the circuit court erred. Accordingly, she has filed a motion to withdraw as counsel. See *Anders v. California*, 386 U.S. 738 (1967). She has notified respondent of the

1

motion, and this court has provided him with ample opportunity to respond. However, he has not done so. After considering the record on appeal and counsel's motion, we agree that this appeal presents no reasonably meritorious issues. Thus, we grant counsel leave to withdraw and affirm the circuit court's judgment.

¶ 4                                      BACKGROUND

¶ 5     This case began on July 7, 2020, when the State filed a petition for adjudication of wardship, alleging that Ryleigh D., who was born March 3, 2020, and Austin D., who was born July 2, 1919, were neglected and abused. Specifically, the State alleged that (a) their mother, Amber H., had previously been investigated by the Department of Children and Family Services (DCFS) and had open juvenile and abuse cases that resulted in three of the minors' siblings being placed with their father; (b) Amber H. had a history of drug abuse; (c) Ryleigh D. had received head injuries that Amber H. allegedly caused and that caused Ryleigh D. to be hospitalized; (d) Amber H. admitted having shaken Ryleigh D.; (e) as a result of that incident, Amber H. had been charged with two counts of aggravated battery; and (f) the putative father, respondent, was incarcerated, with a scheduled release date of February 11, 2021.

¶ 6     Following an initial hearing, the circuit court granted temporary custody of the minors to DCFS. An initial service plan required respondent to submit to drug tests, sign releases allowing DCFS to communicate with service providers, complete a substance abuse assessment and engage in any recommended treatment, abstain from illegal substances, complete a domestic violence assessment and any recommended treatment, and avoid further instances of domestic violence in his relationships. Subsequent DNA testing ordered at the respondent's request established that he was in fact the minors' father.

2

¶ 7       At an October 8, 2020, adjudicatory hearing, following a stipulation by Amber H., the court found the minors abused and neglected.  Respondent admitted the allegations as well, given that none of them directly involved him.  Amber H. later pleaded guilty to aggravated battery to Ryleigh D.

¶ 8       At a November 5, 2020, dispositional hearing, respondent testified that he was scheduled to be released from prison on January 5, 2021.  He knew nothing about the foster parents but believed that Amber H. was doing everything possible to have the children returned home.  He admitted to having numerous prior convictions and that he used to drink alcohol and use cannabis.  However, he did not believe he needed substance treatment, as he had "no drug history" and was not an alcoholic.  He did not object to engaging in anger management, as he wanted to do what was best for the children and himself.  However, he could not participate in services while incarcerated.  The court found it in the children's best interests that they be temporarily placed in DCFS's custody.

¶ 9       A February 2021 service plan rated respondent unsatisfactory as he had only recently been paroled and had not yet participated in any services.  In the succeeding months, respondent found suitable housing with his mother and completed a substance-abuse assessment.  He visited regularly with the children.

¶ 10      At some point in the fall, respondent lost contact with the agency.  He was believed to have moved and his listed phone number was not working.  At about the same time the case was transferred to a different agency which also could not contact respondent.  As a result, respondent did not visit the children during this time.

¶ 11    Respondent was rated unsatisfactory for the January 2021 and June 2021 service plans which, for some reason, were not filed until January 2022, when respondent reestablished contact with the agency.

¶ 12    At a February 2022 permanency hearing, the guardian *ad litem* stated that the children had acted out following visits with respondent. Based on the most recent service plan, the court found that respondent had made neither reasonable efforts nor reasonable progress toward the return of the children. The court also found that DCFS had not made reasonable efforts to facilitate the reunion.

¶ 13    A permanency report showed that respondent was unable to complete drug testing because there was no provider in his area. He had just started parenting classes. Visits had nominally resumed although respondent frequently cancelled visits at the last minute.

¶ 14    On April 5, 2022, the State petitioned to terminate the parental rights of both parents. The petition alleged that respondent had failed to maintain a reasonable degree of interest, concern, or responsibility for the children's welfare and had failed to make reasonable progress toward the return-home goal between October 8, 2020, and July 8, 2021, and between July 5, 2021, and April 5, 2022. At the next hearing, the goal was accordingly changed to substitute care pending termination of parental rights.

¶ 15    During 2022, the agency received reports of respondent abusing drugs, but he was unable to be tested due to his location. During that time, he completed a parenting class and returned to domestic-violence services.

¶ 16    The court conducted a fitness hearing. Erin Schaub was respondent's caseworker during the early portion of the case. She testified generally about respondent's lack of compliance with the earlier service plans. At some point during Schaub's time as caseworker, respondent became

4

unreachable, as he no longer had a working telephone number. In September 2021, the case was transferred to another agency.

¶ 17 During Schaub's time on the case, respondent had some visits with the children, but there were also problems with the contractor used to supervise visits, and there was a delay in replacing that contractor. Respondent was still inconsistent in attending visits. When he did visit, the visits went well, and he was appropriate. There was never a time when Schaub managed the case that it would have been safe to return the children to respondent.

¶ 18 Amanda Beasley-Ricks was respondent's current caseworker. She prepared the January 20, 2022, service plan. She rated respondent unsatisfactory on all substantive tasks. She had no contact with him from the time she was assigned the case in October 2021 until January 2022. Respondent did not begin parenting classes until March 2022, or domestic violence classes until December 2022. He did not visit with the children until February 2022. She rated respondent unsatisfactory overall for the period of January to June 2022. He had not made sufficient progress for the children to be returned to him.

¶ 19 Respondent testified that he could not participate in services while incarcerated but started to do so when he was released. However, his provider quit, and then other staffing issues occurred. According to respondent, he was discharged from services for missing one appointment, and explained that working in an oil field more than an hour away made it difficult to engage in services. He had a suitable home with his mother where the children could be returned to him.

¶ 20 The court found that the State proved by clear and convincing evidence that respondent had failed to make reasonable progress toward the return-home goal during the relevant time periods, and, as a result, he was an unfit parent.

5

¶ 21    The cause then proceeded to a best-interests hearing.  There, Beasley-Ricks testified that she regularly visited both children in their respective foster homes.  Austin was placed with the W. family, as was a younger brother.  He was bonded with and integrated into the family.  Previous behavioral issues had stabilized.  His foster parents met his medical and other needs and were willing to adopt him.  Beasley-Ricks opined that it was in Austin's best interests that respondent's parental rights be terminated and the W. family be allowed to adopt him.

¶ 22    Ryleigh was placed with the B. family.  She was bonded with them.  She did very well and there were no concerns for her well-being.  She too had special medical needs that the B. family managed.  They were willing to adopt her.  Beasley-Ricks believed it was in Ryleigh's best interests to terminate respondent's parental rights, allowing the B. family to adopt her.  Both families ensured that the children continued to see each other.

¶ 23    Ashleigh W. testified that Austin had been placed with her family for about 18 months.  He went to school, had an excellent therapist, was enrolled in gymnastics, and was "part of the family."  The W. family were able to provide for him and to manage his medical needs.

¶ 24    Danielle B. testified that Ryleigh has been placed in her home since September 2020.  Ryleigh was bright and "a bundle of joy" who had "come a long way."  The B. family took her to a neurologist for epilepsy as needed.  She called Danielle "mom" and her husband "dad."  Danielle believed her family could financially provide for Ryleigh.  She loved her very much and wanted to adopt her.

¶ 25    Respondent testified that he worked in a junk yard in Beckemeyer, where he earned enough to take care of his children.  He had a home that was adequate for them, where he had lived for more than two years.  He believed he could care for his children and provide a better home for them.  In the past, he cared for Austin alone.  Respondent thought he should be given a chance to

be in his children's lives and felt that he had not been given a chance to do that since he was released from prison.

¶ 26 The court found that it was in the best interests of both children to terminate respondent's parental rights.[1] Respondent timely appealed, and counsel was appointed to represent him.

¶ 27                                                      ANALYSIS

¶ 28 As noted, appointed counsel has moved to withdraw, suggesting that there are no viable arguments for disturbing the circuit court's judgment. Counsel first concludes that the evidence supported the court's finding that respondent was unfit and any argument to the contrary would be frivolous. We agree.

¶ 29 A proceeding to terminate parental rights occurs in two stages. *In re C.W.*, 199 Ill. 2d 198, 210 (2002). First, the State must prove, by clear and convincing evidence, that the parent is "unfit to have a child" under one or more of the grounds in the Adoption Act. *In re D.T.*, 212 Ill. 2d 347, 352 (2004); see 750 ILCS 50/1(D) (West 2020). Each statutory ground is independent so that if one is established, the court's finding of unfitness can be affirmed. *In re Veronica J.*, 371 Ill. App. 3d 822, 828 (2007).

¶ 30 Here, the State more than met its burden of proving respondent unfit for failing to make reasonable progress. The State alleged he failed to make reasonable progress during two nine-month periods, from October 8, 2020-July 8, 2021, and from July 5, 2021-April 5, 2022. Reasonable progress "is judged by an objective standard based upon the amount of progress measured from the conditions existing at the time custody was taken from the parent." *In re Daphnie E.*, 368 Ill. App. 3d 1052, 1067 (2006). Reasonable progress requires, at a minimum,

---

[1]Amber H. had executed consents to the adoption of the minors several months earlier and is not a party to this appeal.

"measurable or demonstrable movement toward the goal of reunification." *Id.* Measuring such progress includes consideration of the parent's compliance with the service plans and the court's orders in light of the reasons the children were removed in the first place. *Id.* Reasonable progress has been made when the trial court can conclude that it will be able to order the children returned to parental custody in the near future. *Id.* Conversely, reasonable progress has not been made where a minor is no closer to being returned to a parent's custody than at the time of the initial removal from custody. *In re D.J.S.*, 308 Ill. App. 3d 291, 295 (1999).

¶ 31 Here, the children were not removed because of respondent's conduct. However, he was incarcerated at the time and could not provide for them in any event. The service plan developed for him required him to complete a number of services. While he sporadically engaged in those services, he did not complete any until years after the nine-month periods at issue and after the State had filed a termination petition.

¶ 32 The supervising agencies were unable to contact respondent for several months, during which time he did not visit with the children. Even after visits resumed, his attendance was sporadic at best. He frequently would confirm a visit only to cancel it the next day. Thus, the evidence supported the court's finding of unfitness.

¶ 33 The second step of termination proceedings involves deciding whether the children's best interests require that a parent's rights be terminated. That decision lies within the circuit court's sound discretion. *In re C.M.*, 319 Ill. App. 3d 344, 360 (2001). Here, Beasley-Ricks testified that both children reside in loving homes where their needs are being met. She opined that their best interests dictated that they be adopted by their respective foster parents. Ashleigh W. and Danielle B. testified about how much they cared for the children and how they had become integrated into their families. Both looked forward to adopting them. Conversely, respondent, who had been

8

repeatedly incarcerated and had a history of drug-related convictions, offered little more than his unsupported opinion that he could provide the children with a better home.

¶ 34                                    CONCLUSION

¶ 35    As this appeal presents no issue of arguable merit, we grant OSAD leave to withdraw and affirm the circuit court's judgment.


¶ 36    Motion granted; judgment affirmed.