NOTICE

Decision filed 08/15/23. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2023 IL App (5th) 230323-U

NO. 5-23-0323

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| *In re* SANTANA L., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Champaign County. |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | |
| v. | ) | No. 21-J-2 |
| | ) | |
| Breanna L., | ) | Honorable |
| | ) | Brett M. Olmstead, |
| Respondent-Appellant). | ) | Judge, presiding. |

_____

JUSTICE McHANEY delivered the judgment of the court.
Justices Welch and Barberis concurred in the judgment.

**ORDER**

¶ 1    *Held*: Where evidence amply supported the circuit court's conclusions that respondent was an unfit parent and that her son's best interests required terminating her parental rights, and any argument to the contrary would lack merit, we grant respondent's appointed appellate counsel leave to withdraw and affirm the circuit court's judgment.

¶ 2    Respondent, Breanna L., appeals the circuit court's orders finding her an unfit parent and terminating her parental rights to her son, Santana L. Her appointed appellate counsel concludes that there is no reasonably meritorious argument that the court erred in either respect and, accordingly, has filed a motion to withdraw as counsel. See *Anders v. California*, 386 U.S. 738 (1967). Counsel has notified respondent of the motion and this court has provided her with ample opportunity to respond. However, she has not done so. After considering the record on appeal,

1

and counsel's motion, we agree that this appeal presents no arguably meritorious issues. Thus, we grant counsel leave to withdraw and affirm the circuit court's judgment.

¶ 3                                     BACKGROUND

¶ 4     On September 15, 2021, the State filed a petition for adjudication of wardship, alleging that Santana L. was dependent because respondent's mental disability left her unable to care for him properly.[1] Following a shelter-care hearing, for which no transcript appears in the record, the court noted that, shortly after the minor's birth, the Department of Children and Family Services (DCFS) had received a hotline call about respondent. Respondent, who had herself been a ward of the court prior to turning 21, had ongoing mental health issues that included hearing voices "telling her to inappropriately touch her child." The court also made the following findings:

> "Respondent mother was observed to have difficulty properly feeding her child, and in one instance failed to feed Santana for approximately 14 hours due to her leaving the formula at her sister's place and wandering around with her baby for several hours.
>
> Intact services were opened on 9/1/21. Respondent mother had not taken her psychotropic medication to treat her diagnoses for her mental illnesses until recently, and later expressed doubts that the medications were effective on her. She also expressed a desire to have others take care of her child so that she could have a reset to potentially be admitted to the Pavilion [(a mental health facility)] as on previous occasions so that her mental health and medications could be stabilized."

¶ 5     There followed numerous hearings for which the record does not contain transcripts. At an adjudicatory hearing, respondent admitted the petition's allegations, leading the court to conclude that a factual basis existed.

---

[1]The petition also named the minor's putative father, Philip S., who is not a party to this appeal.

¶ 6    At a March 25, 2022, dispositional hearing, the court, after considering DCFS's dispositional report, found respondent unfit due to "long standing mental health issues that make her home environment dangerous for any child but especially a child as young as [Santana L.]. In the past, respondent has addressed this issue only sporadically, and so far she has not endeavored to start addressing it in this case." Accordingly, the court made Santana L. a ward of the court and gave DCFS sole custody and guardianship. Between June 22, 2022, and January 13, 2023, the court reviewed the case three more times, each time finding that respondent had made neither reasonable efforts nor reasonable progress toward the goal of returning Santana L. to her.

¶ 7    On January 12, 2023, the State filed a petition to find respondent unfit and terminate her parental rights. The petition alleged that she had not made reasonable efforts, between April 12, 2022, and January 12, 2023, to correct the conditions that were the basis for Santana L.'s removal, had not made reasonable progress toward his return during the same period, and had not maintained a reasonable degree of interest, concern, or responsibility for his welfare.

¶ 8    Respondent did not appear at the subsequent adjudicatory hearing. Jessica Moore, respondent's caseworker, testified that, since she took over the case in June 2022, she had not had contact with respondent. She believed that a previous caseworker had met with her and referred her to services, including parenting classes, substance abuse treatment, domestic violence classes, and mental health counseling. To Moore's knowledge, respondent had not completed any of those services and had not sought visitation with Santana L.

¶ 9    Moore said that she had received one voicemail message from respondent. She called her back but got no response. She also sent four letters to respondent's last known address but received no reply.

3

¶ 10 Moore had been in regular contact with Santana L.'s foster mother, Jennifer L., who is respondent's sister. Jennifer knew only that respondent lived somewhere in the area of Champaign, Urbana, or Rantoul. According to Jennifer, respondent had no phone, used wi-fi, and could only be contacted through Facebook Messenger. However, Moore's supervisor said that it was not appropriate to contact a client via Messenger, so Moore asked Jennifer to have respondent call her. A diligent search for respondent was conducted in January prior to the filing of the termination petition.

¶ 11 On cross-examination by respondent's counsel, Moore did not know with certainty whether respondent was aware of the court date. In argument, counsel acknowledged that the evidence presented suggested that respondent had not engaged in any services, and he could not prove otherwise. He argued, however, that in light of what he considered DCFS's feeble efforts to contact her, she should perhaps be given a further opportunity.

¶ 12 The court found that the State had proved all three counts of the petition and thus found her unfit. The court rejected the argument that DCFS should be faulted for respondent's failure to attend the hearing. The court noted that respondent had appeared at a previous hearing where the next court date was set and that, despite the change in caseworkers, the same agency retained the file. The court stated:

> "I think it's the argument he's got to make here, but the law doesn't require that when a parent has notice of and has appeared in court and knows about this court proceeding and knows who the—where the casework is and where the agency is—she even knows where Santana is placed—that a parent like that now DCFS has to organize a search party and get bloodhounds to scour the county looking for [respondent] to drag her kicking and screaming into this case."

4

¶ 13   A best interest report showed that respondent had no stable housing or employment and was not engaged in services. Santana L. remained in the foster care of Jennifer L. and her husband, where he was doing well. The report thus recommended terminating respondent's parental rights.

¶ 14   Respondent appeared at the best interest hearing. She testified that she was living in a rented trailer in Rantoul with a brother, a sister, and a friend. She was not using alcohol or marijuana because it interfered with her medication. She had not contacted Moore because she did not know how to get in touch with her.

¶ 15   Respondent said that she had recently been seeing a psychiatrist and a counselor. She had been seeing the former since before Santana L. was born. She had been diagnosed with bipolar disorder. She was taking Abilify, which calmed her anxiety, anger, and other emotions. She had been seeing her counselor for about three months but had seen her in the past for about a year.

¶ 16   She had not provided documentation of counseling to her caseworker because she had not "heard about court at all." She acknowledged that she had been to court previously and heard the judge give the next court dates, but that she did not attend those hearings. She explained, "I misplaced the card, so I didn't know which number to call. I called the courthouse and asked which date it was, but they couldn't send me to the right place."

¶ 17   She found out about the best interest hearing the day before, when Jennifer relayed a message from respondent's lawyer. A friend brought her to court for the best interest hearing, which was "very important" to her because it involved her son.

¶ 18   She acknowledged that she had not parented Santana L. regularly and did not feel capable of doing so. However, she was "a work in progress" and was "getting there." She did not visit Santana L. but video-chatted with him every day. Santana L. called her "mom" and appeared happy to talk to her. She sometimes read to him during their chats; other times, they watched a

5

movie together or she watched him play. Santana L. lived with Jennifer and her husband, whom she described as "like a father to me," and she had a good relationship with Jennifer. Every month, she bought Santana L. diapers, shoes, and clothes.

¶ 19 She did not want her son to grow up like she had. She did not, however, expect the court to return Santana L. to her immediately, because she needed to ensure her mental health was in order and that she could wake up every day and do the things necessary to parent. While at one time, she had wanted Jennifer to adopt Santana L., she now felt he would be better off with her.

¶ 20 The court found that it would be in the minor's best interests to terminate respondent's parental rights. The court acknowledged that respondent sincerely wanted to be a mother to her son and wanted him to have a better life than she had. However, she acknowledged that she was not then capable of parenting him and did not know when she would be able to do so. In the meantime, Santana L. required a stable environment, and he was doing well in the only home he had ever known. Because the foster mother was respondent's sister, she would be able to continue to nurture his family relationships. Respondent timely appealed.

¶ 21                                                    ANALYSIS

¶ 22 Respondent's appointed appellate counsel concludes that he can make no reasonably meritorious argument that the court erred by finding respondent unfit and terminating her parental rights. A proceeding to terminate parental rights proceeds in two stages. *In re C.W.*, 199 Ill. 2d 198, 210 (2002). First, the State must prove, by clear and convincing evidence, that the parent is "unfit to have a child" under one or more of the grounds in the Adoption Act. *In re D.T.*, 212 Ill. 2d 347, 352 (2004); see 750 ILCS 50/1(D) (West 2020). Each statutory ground is independent so that if one is established, the court's finding of unfitness can be affirmed. *In re Veronica J.*, 371 Ill. App. 3d 822, 828 (2007).

6

¶ 23 Here, the State alleged, *inter alia*, that respondent failed to make reasonable progress during the eight months from April 12, 2022, through January 12, 2023. Reasonable progress "is judged by an objective standard based upon the amount of progress measured from the conditions existing at the time custody was taken from the parent." *In re Daphnie E.*, 368 Ill. App. 3d 1052, 1067 (2006). Measuring such progress includes consideration of the parent's compliance with the service plans and the court's orders in light of the reasons the children were removed in the first place. *Id.* Reasonable progress has been made when the trial court can conclude that it will be able to order the children returned to parental custody in the near future. *Id.* Conversely, reasonable progress has not been made where a minor is no closer to being returned to a parent's custody than at the time of the initial removal from custody. *In re D.J.S.*, 308 Ill. App. 3d 291, 295 (1999).

¶ 24 We agree with counsel that it is difficult to formulate an argument that the circuit court erred in finding respondent unfit. Respondent's trial counsel essentially conceded that the evidence overwhelmingly supported this conclusion. Respondent did not attend the hearing. The only evidence came from Moore, who testified that she had never spoken directly to respondent and, accordingly, had no documentation that she had ever sought visitation with Santana L. or engaged in any services whatsoever.

¶ 25 The court reasonably rejected respondent's counsel's argument that the agency's failure to make a more diligent effort to locate respondent was partially to blame for her failure to attend court or engage in services. Respondent acknowledged at the best interests hearing that she had been given the future court dates but misplaced them. She further acknowledged speaking with the previous caseworker and, as the court noted, the file remained with the same agency throughout the case. Moore testified that respondent left a phone message for her at one point but did not

7

answer a callback and apparently never followed up. Respondent was able to call the circuit clerk's office and her own lawyer, either of which could likely have provided her with contact information. Thus, the court's conclusion that respondent was unfit was supported by the evidence.

¶ 26 Counsel further concludes that no good-faith argument can be made that the court erred by terminating respondent's parental rights. If the circuit court finds a parent unfit, the court must then decide whether it is in the child's best interests that the parent's rights be terminated. 750 ILCS 50/1(D) (West 2020); *In re M.J.*, 314 Ill. App. 3d 649, 655 (2000). At this stage, the focus shifts to the child's best interests and away from the rights of the parent. *In re P.S.*, 2021 IL App (5th) 210027, ¶ 30. "The parent's interest in maintaining the parent-child relationship must yield to the child's interest in a stable, loving home life." *In re D.T.*, 212 Ill. 2d 347, 364 (2004). We will reverse a decision to terminate parental rights only if it is against the manifest weight of the evidence. *In re Tiffany M.*, 353 Ill. App. 3d 883, 892 (2004).

¶ 27 Counsel concludes that, given respondent's testimony at the best interests hearing that she had reengaged in services to treat her mental health issues and sincerely wanted to parent Santana L., it was reasonable to argue in that forum that the minor's best interests no longer mandated terminating respondent's rights. However, counsel maintains that, given the reasonableness of the court's findings and the deferential standard of review on appeal, it would be frivolous to contend in this court that the circuit court erred.

¶ 28 At the time of the hearing, respondent had only recently reengaged in mental health services, after the nine-month period alleged in the petition had expired. She acknowledged that she was still a "work in progress" and had more to do to stabilize her own mental health before she could successfully parent Santana L. She understandably could not provide a timetable as to how long that would take. The court properly recognized that Santana L.'s interests took

8

precedence at that point and that respondent's ongoing struggles meant that she would not be able to provide him with a stable home for the foreseeable future. However, his foster parents were doing just that, and thus his best interests required that he remain in the only home he had ever known.

¶ 29                                    CONCLUSION

¶ 30    As this appeal presents no issue of arguable merit, we grant counsel leave to withdraw and affirm the circuit court's judgment.


¶ 31    Motion granted; judgment affirmed.