2024 IL App (1st) 231691-U

SECOND DIVISION
July 23, 2024

No. 1-23-1691

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).
_____

IN THE APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| *In re* THE INTEREST OF C.T., A.T., and P.T., Minors, | ) ) | Appeal from the Circuit Court |
| Minors-Respondents-Appellees | ) ) | of Cook County |
| (PEOPLE OF THE STATE OF ILLINOIS, | ) ) | 19 JA 454 |
| Petitioner-Appellee, | ) ) | 19 JA 455 19 JA 456 |
| v. | ) ) | |
| Angelina C., | ) ) | Honorable Tiesha Smith, |
| Mother-Respondent-Appellant). | ) | Judge Presiding |

_____

JUSTICE McBRIDE delivered the judgment of the court.
Presiding Justice Howse and Justice Cobbs concurred in the judgment.

## O R D E R

¶ 1    *Held:* Appeal dismissed for lack of jurisdiction where respondent-mother failed to file a timely notice of appeal from a final order under Rule 311, or a timely petition for leave to appeal under Rule 306.

¶ 2    Respondent, Avangelina C., filed a notice of appeal purporting to challenge various orders entered over approximately four-and-a-half years in proceedings involving her three children under the Juvenile Court Act. For the reasons that follow, we conclude that we do not have jurisdiction to consider Avangelina C.'s appeal, and must dismiss it.

¶ 3    The record shows that Avangelina C. is the biological mother of minors C.T., A.T., and P.T. C.T. is a six-year-old girl; A.T. is a 14-year-old boy; and P.T. is 17-year-old girl. C.T.'s biological father is Josue T., and A.T. and P.T.'s biological father is German T.

¶ 4    This case began in May 2019, when the State filed motions for temporary custody and petitions for adjudication of wardship for all three children, who had been living with Avangelina C. and Josue T. The State alleged there were ongoing issues of domestic violence in the home while the children were present, and that A.T. had bruises caused by Josue T. The State further alleged that Avangelina C. was refusing access to the children and tried to remove the children from their placement after DCFS took protective custody of them.

¶ 5    The trial court held a temporary custody hearing on May 3, 2019, and placed all three children in DCFS temporary custody. There is no transcript of this hearing in the report of proceedings on appeal. The written order, however, indicates that Avangelina C. received notice and was present for the hearing. The same day, Avangelina C. signed and submitted an affidavit of assets and liabilities, averring that she was financially unable to hire a lawyer, and the court entered a written order appointing a private bar attorney to represent Avangelina C.

¶ 6    In June 2019, despite being represented by an attorney, Avangelina C. filed a *pro se* motion to vacate temporary custody based on the purported appointment of a short-term guardian. Avangelina C. attached a notarized document in which she averred that she was "no longer either willing or able to make and carry out day-to-day child care decisions concerning the child[ren]" and that she was therefore appointing a third party, Elsa C., as short term guardian for the children. Avangelina C. withdrew the motion in July 2019.

¶ 7    Avangelina C. also filed a *pro se* motion to dismiss the adjudication petitions on August 2, 2019, contending that the adjudication hearing had not been held within 90 days in violation of section 2-14 of the Juvenile Court Act (705 ILCS 405/2-14(b) (West 2024)).

¶ 8    Thereafter,  Avangelina C.'s attorney filed a motion to withdraw as counsel. At a hearing on August 19, 2019, the court admonished Avangelina C. about the "gravity of proceeding" *pro se*, and the importance of having counsel to comply with various legal rules including the rules of evidence and the Juvenile Court Act. The court initially stated that it was going to deny counsel's motion to withdraw to give Avangelina C. time to reconsider her desire to terminate the attorney-client relationship. Avangelina C., however, reiterated that she wanted the court to "grant[ ] it now," and the court did so.

¶ 9    Also at the hearing, the court denied Avangelina C.'s motion to dismiss, reasoning that it did not make a formal finding of paternity until June 20, 2019, and, therefore, the date it had set for adjudication—September 13, 2019—fell within the 90-day statutory timeframe to commence proceedings. The Public Guardian informed the court that she had received a "notice of removal" document, in which Avangelina C. and Josue T. purported to remove the case to federal court. The court then continued the case for status.

¶ 10    On September 12, 2019, the guardian *ad litem* filed a motion in the circuit court to continue proceedings, explaining that Avangelina C. and Josue T. had not only filed for removal to federal court, but had also moved to dismiss in federal court. On September 13, 2019, the circuit court granted the motion of the guardian *ad litem* and entered a stay of proceedings pursuant to section 1446 of the United States Code (28 U.S.C. § 1446(d) (2018)), which provides that when a party

files notice of removal of a case to federal court, "the State court shall proceed no further unless and until the case is remanded."

¶ 11    Thereafter, on September 20, 2019, the guardian *ad litem* filed a motion to advance and reset and select a new adjudication date. In the motion, the guardian *ad litem* informed the circuit court that the federal court had issued an order on September 17, 2019, dismissing the motions for removal and dismissal and remanding the case back to the Illinois circuit court. The circuit court granted the motion of the guardian *ad litem* on September 25, 2019, and continued the case to October 10, 2019, for the adjudication hearing.

¶ 12    On October 10, 2019, Avangelina C. filed a *pro se* notice of appeal, indicating that she was appealing judgments from May, August, and September 2019. This court ultimately dismissed that appeal for want of prosecution in September 2020.

¶ 13    The same day Avangelina C. filed her notice of appeal, the trial court began the adjudication hearing, which then continued on December 6, 2019. Avangelina C. was not present, and no attorney appeared for her, on either date. The evidence presented at the adjudication hearing included testimony from a DCFS child protection investigator, who described the "hazardous" condition of the home. She also testified that the minors reported various incidents of domestic violence between Avangelina C. and Josue T., and that P.T. reported witnessing Avangelina C. and Josue T., hit C.T. and A.T.  The investigator described Avangelina C.'s behavior during the investigation as "dismissive ***, hostile and aggressive," and testified that Avangelina C. had made threats toward her, and had sent emails to her personal email address. The investigator believed that further examination into Avangelina C.'s mental health was necessary.

¶ 14    At the conclusion of the December 6, 2019, hearing, the circuit court adjudicated C.T., A.T. and P.T. wards of the court based on findings of abuse and neglect predicated on an injurious environment (705 ILCS 405/2-3(1)(b) (West 2018)) and a substantial risk of physical injury (705 ILCS 405/2-3(2)(ii) (West 2018)). Specifically, regarding A.T., the court additionally found that he was abused due to excessive corporal punishment. 705 ILCS 405/2-3(2)(v) (West 2018).  In its written order, the court stated it made its findings "based on photos of home environment, found to be impassable, & evidence of domestic violence in the minors' presence, including incident with a wire & choking, evidence of alcohol use & evidence that both [Avangelina C. and Josue T.] hit" C.T. and A.T.

¶ 15    The trial court appointed a new bar attorney to represent Avangelina C. on March 9, 2020.

¶ 16    On December 2, 2020, the court commenced a dispositional hearing, which was continued several times and spanned several days. Although transcripts of all court dates do not appear in the record on appeal, it appears that the court initially focused the dispositional hearing on A.T. and P.T. On December 10, 2020, Avangelina C. was present, along with counsel. Counsel for Avangelina C. informed the court that Avangelina C. did not object to P.T. and A.T. being returned to their father, German T. Avangelina C. understood that the minors had "been with the father for a while," and she "d[id] not want to disrupt that." Both the Public Guardian and the State's Attorney also indicated that they had no objection to A.T. and P.T. being returned to German T., and they asked the court to find that he was "fit, willing and able" to care for them. At the conclusion of the hearing, the court agreed, finding that it was in the best interest of both A.T. and P.T. that they be returned to the custody of German T., and that German T. was "fit, willing and able to care for" them. Regarding Avangelina C., the court found that she was unable to protect,

train and discipline the children. The court then continued the case until December 21, 2020 to resume the dispositional hearing regarding C.T. That same day, the court entered written dispositional orders for A.T. and P.T., placing them in the custody of their father, German T., and an order of protective supervision under section 2-24 of the Juvenile Court Act.

¶ 17    On December 21, 2020, the dispositional hearing continued regarding C.T. At the hearing, a DCFS caseworker testified that C.T., who was then three years old, was in a safe and appropriate foster placement, with no signs of abuse, neglect, corporal punishment, or unusual incidents. The caseworker further testified regarding Avangelina C.'s lack of participation in the recommended services. The caseworker described Avangelina C. as guarded, observing that she questioned the legitimacy of all the services and DCFS's assessments as to what services she needed. The caseworker recommended that C.T. be adjudged a ward of the court. Avangelina C. also testified, stating that she had been told "there was nothing wrong with [her] and there was no concern for needing any substance abuse treatment or services." Regarding parenting classes, she claimed that due to a disability, DCFS was supposed to provide her with accommodations, such as transportation, but they did not do so. She stated that she would be willing to participate in virtual parenting classes if re-referred.

¶ 18    On September 8, 2021, following arguments, the circuit court found both Avangelina C. and Josue T. unable for some reason other than financial circumstances alone to care for, protect, train, or discipline C.T.; adjudicated C.T. a ward of the court; and placed her in the custody/guardianship of the DCFS Guardianship Administrator with the right to place her. The court observed that the case entered the system due to domestic violence between Avangelina C. and Josue T., reports of alcohol abuse and mental illness, and extreme clutter in the home. Because

some of those issues had not been resolved, the court found by a preponderance of the evidence that both Avangelina C. and Josue T. were unable to care for, protect, train, or discipline C.T.

¶ 19    Meanwhile, in the proceedings regarding A.T. and P.T., German T. filed a motion to close the proceedings, although a copy of the motion does not appear in the record on appeal. The trial court granted the motion on May 6, 2021, finding that the family was not in need of further court monitoring, and that it was in the best interest of A.T. and P.T. that the case be closed. The court terminated the order of protective supervision, and closed the case, with "legal custody to stand in German T[.], father, only." A transcript of the May 6, 2021 hearing is not contained in the report of proceedings.

¶ 20    On October 1, 2021, Avangelina C., through counsel, filed a notice of appeal naming C.T. and indicating that she was appealing from orders entered on August 19, 2019, October 10, 2019, December 6, 2019, and September 8, 2021 (appeal No. 1-21-1233). Also on October 1, 2021, Avangelina C. filed a *pro se* notice of appeal, naming C.T., A.T., and P.T., and the decision dates of August 19, 2019, December 6, 2019, and September 8, 2021 (appeal No. 1-21-1362). Finally, on October 1, 2021, Josue T. filed a *pro se* notice of appeal, naming C.T. and the decision dates of August 19, 2019, December 6, 2019, and September 8, 2021 (appeal No. 1-21-1363).

¶ 21    This court consolidated the three appeals, and counsels for Avangelina C. and Josue T. each filed motions to withdraw pursuant to *Anders v. California*, 386 U.S. 738 (1967). In a July 13, 2022, summary order, this court initially explained that we lacked jurisdiction to consider any challenges to orders involving A.T. and P.T., as those proceedings had closed on May 6, 2021, and Avangelina C. did not timely file a notice of appeal from that order. *In re C.T., A.T. and P.T., Minors,* Nos. 1-21-1233, 1-21-1362, & 1-21-1363 (Cons.) (2022) (unpublished summary order

under Illinois Supreme Court Rule 23(c)). Accordingly, we dismissed the portions of Avangelina C.'s appeal in which she purportedly challenged any orders pertaining to A.T. and P.T. *Id.* After reviewing the record, including the evidence from the adjudication and dispositional hearings, this court granted both counsels' motions to withdraw, finding no meritorious issues to be raised on appeal. *Id.*

¶ 22    The matter involving C.T. proceeded in the circuit court, and on September 5, 2023, the trial court entered a permanency goal of substitute care pending court determination of termination of parental rights. The transcript of that hearing is not contained in the report of proceedings. Avangelina C. filed another *pro se* notice of appeal in the instant appeal on September 20, 2023, listing all three children. Avangelina C. indicated that she was appealing all orders and judgments from "2019 - 2020" and "2021 - 2022," as well as the September 5, 2023, order.

¶ 23    In this appeal, Avangelina C. raises three challenges to the trial court's orders. First, she contends that she was denied "fair treatment and notice of the legal proceedings," because the "record does not reflect a summons issued by the clerk" or that she was "served at least three days prior to the court appearance." Second, she contends that the court "overstep[ed] its bounds by ordering the parents' medical and mental health records" which "constitutes an unreasonable search and seizure." Finally, she argues that the court improperly allowed the guardian *ad litem* to also serve as the minors' attorney, which she contends is "contrary to the attorney-witness rule of professional conduct in Illinois," and "inhibit[ed] the court's ability to gather necessary information and make a fair assessment of the child's welfare."

¶ 24    Before turning to the merits of Avangelina C.'s arguments on appeal, this court must first consider our jurisdiction. *People v. Smith*, 228 Ill. 2d 95, 103-04 (2008) ("[T]he ascertainment of

its own jurisdiction is one of the two most important tasks of an appellate court panel when beginning the review of a case."). "The filing of a notice of appeal 'is the jurisdictional step which initiates appellate review.' " *Id.* at 104 (quoting *Niccum v. Botti, Marinaccio, DeSalvo & Tameling, Ltd.*, 182 Ill. 2d 6, 7 (1998)). Unless a notice of appeal is properly filed, a reviewing court has no jurisdiction and is obliged to dismiss the appeal. *Id.* Indeed, "the appellate and circuit courts of this state *must* enforce and abide by the rules of [the supreme court]" and do not have the authority to excuse compliance with the filing requirements of the supreme court rules governing appeals. (Emphasis in original.) *People v. Lyles*, 217 Ill. 2d 210, 216 (2005). Whether we have jurisdiction is a question of law, which we review *de novo. People v. Salem*, 2016 IL 118693, ¶ 11.

¶ 25    On October 31, 2023, prior to briefing in this case, the Public Guardian filed a motion to dismiss this case as to A.T. and P.T. for lack of this court's jurisdiction. The Public Guardian noted that Avangelina C.'s notice of appeal listed P.T. and A.T. and indicated that she was appealing orders from 2019 through 2023. The Public Guardian explained, however, that A.T. and P.T.'s cases were closed on May 6, 2021, and that order was a final order from which Avangelina C. did not appeal. Accordingly, the Public Guardian asserted that Avangelina C.'s notice of appeal in this case, filed 28 months after the final order, did not vest this court with jurisdiction to consider orders involving P.T. and A.T. Avangelina C. did not respond to that motion for more than five weeks, and on December 6, 2023, this court granted the motion.

¶ 26    That same day, however, Avangelina C. filed a motion for an extension of time to respond to the motion to dismiss. Accordingly, this court vacated the order granting the Public Guardian's motion to dismiss to allow Avangelina C. the opportunity to respond. Avangelina C. filed her response on January 17, 2023. Avangelina C. acknowledged that the May 6, 2021, order was final,

but contended that the court lacked personal jurisdiction over her because there was no "effective service of process," and accordingly, the order was "void *ab initio.*"

¶ 27    As we admonished Avangelina C. in her prior appeal in which she attempted to untimely challenge orders involving P.T. and A.T.:

> "Appeals from orders entered in child custody proceedings are governed by civil appeals rules. Ill. S. Ct. R. 901(e) (eff. Oct. 1, 2021). As such, Avangelina C. was required to file a notice of appeal from the court's order closing the proceedings within 30 days of its entry (Ill. S. Ct. R. 303(a)(1) (eff. July 1, 2017))—that is, by Monday, June 7, 2021—or a late notice of appeal within 30 days after expiration of the time for filing a notice of appeal (Ill. S. Ct. R. 303(d) (eff. July 1, 2017))— that is, by July 7, 2021. Avangelina C. did not file her notice of appeal naming A.T. and P.T. until October 1, 2021. Because her notice of appeal was untimely, we lack jurisdiction to review the circuit court's order closing the proceedings pertaining to A.T. and P.T., as well as any prior orders concerning these two minors. See *In re S.P.*, 2019 IL App (3d) 180476, ¶ 47. An untimely appeal must be dismissed for lack of jurisdiction. *Huber v. American Accounting Ass'n*, 2014 IL 117293, ¶ 8. Accordingly, we dismiss those portions of Avangelina C.'s appeal No.1-21-1362 in which she purportedly appeals from any orders pertaining to A.T. and P.T."

*In re C.T., A.T. and P.T., Minors,* Nos. 1-21-1233, 1-21-1362, & 1-21-1363 (Cons.) (2022) (unpublished summary order under Illinois Supreme Court Rule 23(c)).

¶ 28    The above analysis applies equally in this case, where Avangelina C.'s notice of appeal— filed 28 months after the final order—is even more untimely.

¶ 29 Avangelina C., however, contends that she can still challenge the trial court's orders because they were "void," where she was not properly served with notice and the court "lacked personal jurisdiction" over her. We observe that Avangelina C. appeared at the initial hearing, subjecting herself to the jurisdiction of the court. See 705 ILCS 405/2-15 (West 2022) ("The appearance of the minor's legal guardian or custodian, or a person named as a respondent in a petition, in any proceeding under this Act shall constitute a waiver of service of summons and submission to the jurisdiction of the court"); *In re D.J.S.*, 308 Ill. App. 3d 291, 294 (1999) ("A plaintiff need not serve process upon a defendant who voluntarily appears in the proceeding.").

¶ 30 Nonetheless, even if we were to accept Avangelina C.'s contention that the order involving A.T. and P.T. is void, our supreme court has explained that the legal proposition that

> "a void order can be attacked at any time by a person affected by it *** by itself, does not act to confer appellate jurisdiction on a reviewing court if such jurisdiction is otherwise absent. [Citation.] Rather, the rule allows a party the ability to always raise the issue of whether an order is void in an appeal where appellate jurisdiction exists and the case is properly before the court of review. [Citation.]" *EMC Mortgage Corp.*, 2012 IL 113419, ¶ 15 (citing *People v. Flowers*, 208 Ill.2d 291, 308 (2003)).

¶ 31    Accordingly, we grant the Public Guardian's motion to dismiss the portion of this appeal in which Avangelina C. purports to challenge any order in the proceedings involving A.T. and P.T.[1]

¶ 32    As to the remaining challenges involving C.T., the Public Guardian and State's Attorney contend in their briefs that this court lacks jurisdiction to consider those claims as well. They assert that the only order from which Avangelina C. could have timely appealed—the September 5, 2023 order—was an interlocutory permanency order changing C.T.'s permanency goal to termination of parental rights, which is not appealable.

¶ 33    A permanency order is generally not considered a final order, as it is subject to review and reevaluation at a minimum of every six months. See 705 ILCS 405/2-28(2) (West 2022); see also *In re Curtis B.*, 203 Ill. 2d 53, 58-60 (2002) (a permanency order generally does not contain any determinations that are "set or fixed as a matter of law"); *In re Alexis H.*, 335 Ill. App. 3d 1009, 1012 (2002) (after each permanency hearing, the trial court's permanency order vacates the original disposition and supersedes it, thus leaving " 'all of the rights and obligations set forth in the permanency order *** open for reexamination and possible revision until the permanency goal is achieved' ") (quoting *Curtis B.*, 203 Ill. 2d at 60); *In re Joseph J.*, 2020 IL App (1st) 190305, ¶ 24. Although permanency orders are not appealable as of right as a final order, they may be

_____

[1] In this court, Avangelina C. also filed a motion "to vacate with prejudice" the trial court's orders for lack of personal jurisdiction based on the allegedly improper service, which this court took with the case. For the reasons set forth above, we do not consider this motion for lack of this court's jurisdiction.

permissibly appealable interlocutory orders governed by Illinois Supreme Court Rule 306(a)(5), (b) (eff. Oct. 1, 2020). Specifically, a party seeking appeal from a permanency order is required to petition for leave to appeal within 14 days of the order. Ill. S. Ct. R. 306(b)(1) (eff. Oct. 1, 2020).

¶ 34    In this case, to appeal the September 5, 2023, permanency order, Avangelina C. would have needed to file a petition for leave to appeal that order no later than September 19, 2023. However, no Rule 306 petition for leave to appeal any permanency order appears in the record, and Avangelina's notice of appeal was filed on September 20, 2023. Even if we could liberally construe Avangelina C.'s notice of appeal as a petition for leave to appeal under Rule 306, her filing would have still been untimely. And even if we were inclined to do so, this court has no discretion to forgive Avangelina C.'s failure to comply with our supreme court rules. *Salem*, 2016 IL 118693, ¶ 19; *In re C.J.*, 325 Ill. App. 3d 502, 505 (2001) (court could not excuse compliance with appeal rules where a notice of appeal was filed one day too late, even though court had previously granted a motion to treat the notice of appeal as timely filed. This court lacks "authority to excuse compliance with the filing requirements of the rules of the supreme court that govern appeals."); *Lyles*, 217 Ill. 2d 210, 216 (2005) ("The appellate court's power attaches only upon compliance with the rules governing appeals" (internal quotations omitted)).

¶ 35    Accordingly, because Avangelina C. did not file a timely notice of appeal from a final order under Rule 311, or a timely petition for leave to appeal under Rule 306, we lack jurisdiction over this appeal and must dismiss it. *Smith*, 228 Ill. 2d at 104.

¶ 36    Appeal dismissed.